# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THERESA J. LOWE, a single woman; LOREN J. BOSSHARD and DONNA A. BOSSHARD, husband and wife, | No. 51898-8-II |
| Appellants, | |
| BURLEIGH M. CUBERT and CAROLYN CUBERT, husband and wife, | |
| Plaintiffs, | |
| v. | |
| FOXHALL COMMUNITY ASSOCIATION, a nonprofit corporation, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Foxhall Community Association is a homeowners association for an equestrian friendly development in Thurston County. In 2015, at a special meeting, members of the community passed a bylaw amendment prohibiting the use of the communal equestrian trails by members' business invitees. The Foxhall Community Association Board of Directors later invalidated the amendment, and Theresa Lowe filed a lawsuit seeking declaratory and injunctive relief to enforce the amendment.

Lowe appeals the trial court's order granting Foxhall Community Association's motion for summary judgment dismissing Lowe's claims. Lowe argues that the trial court erred by concluding that the Foxhall bylaws require in-person presence to vote on bylaw amendments.[1]

We hold that the trial court did not err by granting the Association's motion for summary judgment because the Foxhall bylaws require in-person presence to vote on bylaw amendments. Thus, we affirm the trial court's summary judgment order.

## FACTS

Foxhall is an equestrian friendly development in Thurston County with several miles of equestrian trails, which the Foxhall Community Association maintains. In 1982, the community's developer, Virgil Adams, recorded protective covenants against the community, setting aside tracts of land for equestrian trails "for the benefit of, and [to] be used by, the residents in Foxhall." Clerk's Papers (CP) at 35.

Foxhall Community Association's bylaws discuss the methods by which owners may vote. Article IV of the Bylaws of the Foxhall Community Association provide: "The owners by a majority vote of the voting power in the association present, in person or by proxy, and entitled to vote at any meeting of the owners at which a quorum is present, may remove any member of

---

[1] Lowe also argues that the trial court erred by concluding that bylaw amendment constituted a new restriction on members' benefit of the trails subject to unanimity requirements, the special meeting notice was insufficient, and the special meeting was improperly conducted. Because we hold that the Foxhall bylaws require in-person presence to vote on bylaw amendments, we do not consider these arguments.

the board of directors with or without cause." CP at 46. Former Article V, section 5[2] stated, "A member may exercise his right to vote by proxy." CP at 400. Article X of the bylaws pertaining to amendments states, "The Bylaws may be amended at any time by a vote of a majority of the members of the corporation present at any meeting of the membership duly called for such purpose." CP at 50.

One of the early residents of Foxhall, Les Whisler, purchased two five-acre lots and built a house, stables, and riding arena. Adams and his son, Dennis, approached Whisler to consider boarding horses on his property to make the development more desirable for other equestrian families. Whisler began to board horses from Foxhall residents and nonresidents that lived in the area. Whisler's boarders routinely used the Foxhall equestrian trails. In 2001, Whisler sold his property to the Johnstons. The Johnstons continued to operate a horse boarding business from the property. Over the years, Foxhall residents have disagreed as to whether nonresident boarders should be permitted to use the equestrian trails.

In 2015, one of Foxhall's members, Denise Solveson, called a special meeting. At the special meeting, members of the association voted by paper ballot and passed a bylaw amendment that stated:

> Article VI; POWERS AND DUTIES OF THE DIRECTORS Sec 9. Foxhall Parks and Trails are for the exclusive use of residents, families and friends. Nonresident visitors must be accompanied by a resident when using Foxhall Parks and Trails. Foxhall Association members' businesses may not extend their business activities onto Foxhall Parks and Trails. Members' business invitees, customers, or patrons,

---

[2] The bylaws were updated in March 2017, primarily to bring the bylaws into conformity with changes to the RCWs. Article V, section 5 was amended to narrow the right to vote by proxy in order to "improve governance in Foxhall." CP at 400. The language of former article V, section 5 is most relevant to this case.

whether in trade or in barter, are prohibited from using Foxhall Parks and Trails, even when accompanied by a Foxhall member.

CP at 54-55. Including proxy votes, the amendment passed by a vote of 78-18. A majority of the in-person voters voted "no," at 18-5. CP at 57. Some members who attended the special meeting in person chose to rely on their proxy vote in lieu of casting a paper ballot. In April 2016, the Foxhall board of directors rejected the bylaw amendment.

Lowe filed a lawsuit for declaratory and injunctive relief against the Association on February 22, 2017. The parties filed cross motions for summary judgment. The Association argued that the November bylaw amendment was invalid because (1) it imposed a new restriction on the use of property in conflict with the restrictive covenants governing the trails and (2) the process used to adopt the amendment was flawed in three respects: (a) the use of proxy votes conflicted with the bylaws, (b) the notice was defective, and (c) the procedure during the special meeting was improper. Lowe argued that the restrictive covenants prohibit the public use of Foxhall's trails and the bylaw amendment was properly passed

The trial court entered an order granting the Association's motion for summary judgment, denying Lowe's motion for summary judgment, and dismissing Lowe's claims. Lowe appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review an order on cross motions for summary judgment de novo. *Wilkinson v. Chiwawa Communities Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). In reviewing summary judgment orders, we consider the facts and all reasonable inferences from them "in the light most favorable to the nonmoving party." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400

(1999). Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002); CR 56(c).

## II. VOTING BY PROXY

Lowe argues that the trial court erred by concluding that members could not vote on the bylaw amendment by proxy. Article X of the Foxhall bylaws provides, "The Bylaws may be amended at any time by a vote of a majority of the members of the corporation *present* at any meeting of the membership duly called for such purpose." CP at 50 (emphasis added). At summary judgment, the Association argued, and the trial court agreed, that "present" meant physically present in person. CP at 153. Lowe argues that given the provision expressly permitting voting by proxy, "present" meant present in person or present by proxy. We disagree with Lowe.

We interpret the governing documents of a corporation according to the accepted rules of contract interpretation. *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012). Contract interpretation is a question of law that we review de novo. *Dave Johnson Ins. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339 (2012).

The purpose of contract interpretation is to determine the parties' intent. *Roats*, 169 Wn. App. at 274. Contractual language generally must be given its ordinary, usual, and popular meaning. *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 105, 267 P.3d 435 (2011). We view the contract as a whole, interpreting particular language in the context of other contract

provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669, 15 P.3d 115 (2000).

Lowe relies on Article V, section 5 which states that "[a] member may exercise his right to vote by proxy." Br. of Appellant at 23. But, Article X specifically provides that only members *present* at a meeting may vote to amend a bylaw. And when interpreting contracts, the specific prevails over the general. *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, ___ Wn.2d ___, 450 P.3d 150, 155 (2019). Lowe contends that "present," as used in Article X, means present in person or by proxy. But we give language its usual meaning, and "present" is defined as "being in one place and not elsewhere: being in view or at hand: being before, beside, with, or in the same place as someone or something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1793 (2002). It follows that article X's "present" means present in person. This interpretation is further supported by the bylaws' express use of "proxy" elsewhere. If the drafters had intended to include proxy votes in votes to amend the bylaws, they could have said so, as they did in, Article IV, section 8—"The owners by a majority vote of the voting power in the association present, in person or by proxy, and entitled to vote at any meeting . . . may remove any member of the board of directors." CP at 46.

Lowe also argues that interpreting "present" to mean "present in person" would lead to absurd results because proxies can establish a quorum. Br of Appellant at 26. Washington's homeowners association statute requires that proxies are considered present for the purpose of establishing a quorum. RCW 64.38.040. But the means of establishing a quorum does not

prohibit an association from imposing additional procedural safeguards onto particular types of votes, especially votes as significant as bylaw amendments.

Accordingly we hold that the superior court did not err by granting summary judgment to the Association based on the use of proxy votes to pass the bylaw amendment. We affirm the trial court's summary judgment order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Glasgow, J.

Cruser, J.